IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



HUGH ROYAL EPPS,                )
                                )
    Plaintiff,                )
                                )
v.                              )  Civil Action No. 3:17CV646–HEH
                                )
DR. KATHERINE LAYBOURNE,        )
MD, *et al.*,                   )
                                )
    Defendants.               )

<u>**MEMORANDUM OPINION**</u>
(Dismissing *Bivens* Action)

Hugh Royal Epps, a federal inmate proceeding *pro se* and *in forma pauperis*, filed this *Bivens*[1] action. The matter is before the Court for evaluation pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.    PRELIMINARY REVIEW**

Pursuant to the Prison Litigation Reform Act ("PLRA") this Court must dismiss any action filed by a prisoner if the Court determines the action (1) "is frivolous" or (2) "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2); *see* 28 U.S.C. § 1915A. The first standard includes claims based upon "an indisputably meritless legal theory," or claims where the "factual contentions are clearly baseless." *Clay v. Yates*, 809 F. Supp. 417, 427 (E.D. Va. 1992) (quoting *Neitzke v. Williams*, 490

---

[1] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

U.S. 319, 327 (1989)). The second standard is the familiar standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952. This principle applies only to factual allegations, however, and "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

The Federal Rules of Civil Procedure "require[ ] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (second alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted). Instead, a plaintiff must allege facts sufficient "to raise a right to relief above the speculative level," *id.* (citation omitted), stating a claim that is "plausible on its face," *id.* at 570, rather than merely "conceivable." *Id.* "A

2

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556). In order for a claim or complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citing *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002); *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002)). Lastly, while the Court liberally construes *pro se* complaints, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), it will not act as the inmate's advocate and develop, *sua sponte*, statutory and constitutional claims that the inmate failed to clearly raise on the face of his complaint. *See Brock v. Carroll*, 107 F.3d 241, 243 (4th Cir. 1997) (Luttig, J., concurring); *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

## II. SUMMARY OF PLAINTIFF'S ALLEGATIONS

In his Particularized Complaint (ECF No. 22-2), Epps names as Defendants Dr. Katherine Laybourne, Dr. Mark Diccocco, and "Unknown Medical Staff" and alleges the following:[2]

> 6. In February 2009, Plaintiff informed the FCC Petersburg medical staff of his serious lower back problems stemming from a work-related injury prior to his incarceration.
> 7. When Plaintiff made the prison medical staff aware of his ongoing medical condition, he also informed them that two medications -- Flexil and Naproxen -- were currently offering him the relief he needed.
> 8. On September 16, 2010, Plaintiff's back gave out, and he collapsed. He was in significant pain and could not stand on his own, so he

---

[2] The Court utilizes the pagination assigned to Epps's Particularized Complaint by the CM/ECF docketing system. The Court corrects the capitalization, spelling, and punctuation and omits the emphasis in the quotations from the Particularized Complaint.

3

was taken to medical. At medical, he was given an injection in his left arm to reduce his pain and [they] told him they were scheduling him for an MRI scan to determine the best treatment plan for his back condition.

9. Following this occurrence, Plaintiff began losing feeling in his left leg.

10. An MRI scan was given, and the Plaintiff was seen by contractor Dr. Prakash, who gave Plaintiff a steroid injection to temporarily treat his pain and evaluated the MRI. He then told Plaintiff that it was his opinion that he needed immediate surgery to help his lower back issues.

11. Plaintiff was later told by prison medical staff that he had been scheduled for surgery as recommended by Dr. Prakash.

12. When Plaintiff was taken to Colonial Orthopaedics where Dr. Prakash performs such surgeries for the surgery, Dr. Prakash suddenly reversed course, canceled the surgery, and gave Plaintiff only another epidural steroid injection for his pain. Plaintiff believes that Dr. Prakash was instructed by prison medical staff whose name(s) is/are unknown to him to forego the surgery and go with a less effective means of treatment.

13. The injection temporarily masked the pain, but it ultimately returned even worse, and Plaintiff began experiencing numbness in both his left and right legs.

14. On April 5, 2011, prison medical staff member Vicarthur Factora, MLP recorded, "Patient was seen in Orthopedic clinic on 3/31/2011 following MRI of LS spine. Report stated central canal stenosis with compression of the thecal sac secondary to posterior disc protusion. Impression--Lumbar radiculopathy; Recommendation--Pt will need surgery with lumbar decompression and fusion and muscle relaxants."

15. In that same record, Mr. Factora also recorded a "due date" of 4/29/2011 for "Orthopedic Surgery" and listed the "Reason for Request": "Speciality procedure off-site--This patient has a [history] of chronic back pain; MRI of the LS spine showed central stenosis with compression of the thecal sac secondary to posterior disc protusion of the L4–L5 Recommendation-- Pt. will need surgery with L4–L5 decompression and fusion and muscle relaxants."

16. To date, seven (7) years later, that recommended surgery has still not been performed, and Plaintiff still suffers with extreme lower back pain and numbness of his legs.

17. Instead of the recommended surgery, several temporary-relief epidural injections have been given instead, always leaving Plaintiff in more pain when the medicine from the steroid wears off.

18. Defendant Drs. Katherine Laybourne and Mark Diccocco, MD have a legal responsibility to ensure all inmates under their care receive necessary medical treatment and treatment of chronic pain. Because a specialist (Dr. Prakash) recommended immediate surgery back in 2011 to

relieve Plaintiff's chronic pain and issues of numbness, and this surgery has still not been performed more than seven years later -- leaving Plaintiff in unnecessary and undue pain all these years -- Drs. Laybourne and Diccocco -- the treating physicians (and Clinical Director) of the inmates at the prison where Plaintiff is housed -- are inflicting cruel and unusual punishment on plaintiff in violation of his Eighth Amendment rights to be free from such and are liable for damages. . . .

19. The prison medical staff member(s) whose name(s) is/are unknown to Plaintiff that schedule such surgeries and have instead scheduled only epidural injections for temporary relief of pain instead of the surgery are also liable for inflicting cruel and unusual punishment on Plaintiff in violation of his Eighth Amendment rights to be free from the same. . . .

(Part. Compl. 2–4 (second alteration in original).)[3] Epps asks the Court to "order prison medical staff to expedite the specialist-recommended surgery" or award monetary damages. (*Id.* at 4.)

### III. ANALYSIS

To allege an Eighth Amendment claim, an inmate must allege facts that indicate (1) objectively the deprivation suffered or harm inflicted "was 'sufficiently serious,' and (2) that subjectively the prison officials acted with a 'sufficiently culpable state of mind.'" *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998) (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). With respect to the denial of adequate medical care, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A medical need is "serious" if it "'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the

---

[3] Plaintiff indicates in the header at the top of his Particularized Complaint "(Negligence, Negligence Per Se, Gross Negligence, Violation of Eighth Amendment Rights)," however, in the body of the Particularized Complaint, Plaintiff only identifies an Eighth Amendment claim. (Part. Compl. 2.)

5

necessity for a doctor's attention.'" *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999)).

The subjective prong requires the plaintiff to allege facts that indicate a particular defendant acted with deliberate indifference. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. *Farmer* teaches "that general knowledge of facts creating a substantial risk of harm is not enough. The prison official must also draw the inference between those general facts and the specific risk of harm confronting the inmate." *Quinones*, 145 F.3d at 168 (citing *Farmer*, 511 U.S. at 837); *see Rich v. Bruce*, 129 F.3d 336, 338 (4th Cir. 1997) (stating same). Thus, to survive a motion to dismiss, the deliberate indifference standard requires a plaintiff to assert facts sufficient to form an inference that "the official in question subjectively recognized a substantial risk of harm" and "that the official in question subjectively recognized that his actions were 'inappropriate in light of that risk.'" *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) (quoting *Rich*, 129 F.3d at 340 n.2).

### A. Defendants Laybourne and Diccocco

In order to state a viable claim under *Bivens*, a plaintiff must allege that a person acting under color of federal authority deprived him or her of a constitutional right or of a right conferred by a law of the United States. *See Williams v. Burgess*, No. 3:09CV115, 2010 WL 1957105, at *2 (E.D. Va. May 13, 2010) (citing *Goldstein v. Moatz*, 364 F.3d 205, 210 n.8 (4th Cir. 2004)), *aff'd per curiam*, No. 10–6798, 2011 WL 3664279, at *1 (4th Cir. Aug. 22, 2011). "Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). "Because vicarious liability is inapplicable to *Bivens* . . . suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*; *see Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations").

The sum of Epps's Particularized Complaint is that in 2011, an orthopedist recommended that he have surgery on his back, and more than seven years later, he has not had the recommended surgery. Epps fails to state an Eighth Amendment claim because he alleges that Defendants Laybourne and Diccocco are liable for this seven-year delay under a theory of supervisory liability. Although he characterizes Defendants Laybourne and Diccocco as a "treating physicians (and Clinical Director) of the inmates at the prison where Plaintiff is housed" (Part. Compl. ¶ 18), he fails to allege any facts that suggest that either defendant had any direct involvement or personal responsibility in the deprivation of his rights. Epps's vague allegations do not plausibly suggest that

7

Defendants Laybourne and Diccocco are personally responsible for the alleged conduct. *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp.*, 550 U.S. at 556).

Moreover, Epps alleges no facts that would indicate that Defendants Laybourne or Diccocco as supervisors, "knew of a deprivation and 'approved it, turned a blind eye to it, failed to remedy it, or in some way personally participated.'" *Oakley v. Cowan*, 187 F. App'x 635, 638 (7th Cir. 2006) (some internal quotation marks omitted) (quoting *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). "Absent direct participation, there must at least be [some factual allegations] that the defendants 'acquiesced in some demonstrable way' in the alleged violation." *Id.* (quoting *Palmer v. Marion Cty.*, 327 F.3d 588, 594 (7th Cir. 2003)). Epps's vague allegations fall short of permitting the conclusion that Defendants Laybourne and Diccocco were aware of an excessive risk to Epps's health or safety and ignored that risk. *Parrish ex rel. Lee*, 372 F.3d at 303 (quoting *Rich*, 129 F.3d at 340 n.2). As such, Epps's limited factual allegations against Defendants Laybourne and Diccocco fail to "produce an inference of liability strong enough to nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 256 (4th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 683). Epps fails to allege sufficiently that Defendants Laybourne and Diccocco actually perceived that Epps faced a substantial risk of harm from the medical care or lack of medical care he received. Thus, Epps fails to allege facts sufficient to state an Eighth Amendment claim against Defendants Laybourne and Diccocco.

### B. Unknown Prison Medical Staff Members

Epps also faults unknown prison medical staff for failing to schedule back surgery and providing him instead with only epidural steroid injections to treat the pain. (Part. Compl. ¶ 19.) As a preliminary matter, Epps makes no effort to identify the individuals who were responsible for this alleged constitutional deprivation although that information should have been available to him with minimal effort. Epps also fails to identify with any specificity who refused to schedule the surgery, who instead ordered the epidural injections, or how the failure to schedule the surgery has resulted in injury. *Cf. Grieveson v. Anderson*, 538 F.3d 763, 778 (7th Cir. 2008) (explaining that "[v]ague references to a group of 'defendants,' without specific allegations tying the individual defendants to the alleged unconstitutional conduct, do not raise a genuine issue of material fact with respect to those defendants" (citing *Alejo v. Heller*, 328 F.3d 930, 936 (7th Cir. 2003))). Moreover, Epps's allegations against these unknown prison medical staff are nothing more than speculation. Epps suggests that Dr. Prakash first recommended surgery, and then, "Dr. Prakash suddenly reversed course . . . [and] Plaintiff believes that Dr. Prakash was instructed by prison medical staff whose name(s) is/are unknown to him to forego the surgery." (Part. Compl. ¶ 12.)[4] Again, Epps's limited factual allegations against the unknown prison medical staff fail to "produce an inference of liability strong enough to

---

[4] Any claim against unknown staff members for cancelling the surgery would also be barred by the statute of limitations. Per Epps Particularized Complaint, unknown medical staff allegedly cancelled his surgery in 2011, and Virginia has a two-year statute of limitations for personal injury actions that is borrowed by the federal courts. *Nasim v. Warden*, 64 F.3d 951, 955 (4th Cir. 1995); Va. Code Ann. § 8.01–243(A) (West 2019). Thus, Epps was required to bring such a claim for the cancellation of his surgery no later than 2013. Epps fails to explain why he waited until 2017 to bring his claim that his surgery was cancelled.

9

nudge the plaintiff's claims 'across the line from conceivable to plausible.'" *Nemet Chevrolet, Ltd.*, 591 F.3d at 256 (quoting *Iqbal*, 556 U.S. at 683). Epps's vague allegations fail to state a plausible claim for relief against these unknown individuals.

## IV. CONCLUSION

Because Epps fails to allege sufficiently an Eighth Amendment claim in his Particularized Complaint, his claims and the action will be dismissed without prejudice. An appropriate Order will accompany this Memorandum Opinion.

                                                 /s/
                                    HENRY E. HUDSON
Date: Feb 5, 2019           SENIOR UNITED STATES DISTRICT JUDGE
Richmond, Virginia